IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RYAN CARTWRIGHT,       )
                       )
        Plaintiff,     )
                       )
    v.                 )       1:23-cv-625 (LMB/IDD)
                       )
T-MOBILE US, INC.,     )
                       )
        Defendant.     )

## MEMORANDUM OPINION

Before the Court is Defendant T-Mobile US, Inc.'s ("T-Mobile") Motion to Dismiss Plaintiff Ryan Cartwright's three-count complaint [Dkt. No. 17] ("Motion"), in which Cartwright alleges that his employer, T-Mobile, violated Title VII of the Civil Rights Act of 1964 by failing to accommodate his sincere religious beliefs, forcing him to "choose between his faith and his job" [Dkt. No. 13] at ¶ 36, when it required him either to get vaccinated for COVID-19 or qualify for a religious exemption. Although T-Mobile argues that it lawfully denied Cartwright's request for a religious accommodation from the vaccination requirement, as explained in this Memorandum Opinion, the Court need not reach the merits of the accommodation decision because T-Mobile correctly argues that Cartwright failed to timely exhaust his administrative remedies and has not established that equitable tolling is warranted. For these reasons, Defendant's Motion will be granted.[1]

---

[1] Plaintiff has responded to Defendant's Motion; Defendant has filed a reply brief; and the Court finds that oral argument will not further the decisional process.

## I. BACKGROUND

According to the Amended Complaint [Dkt. No. 13], T-Mobile hired Ryan Cartwright in August 2016 as an account executive in its Small Business Department of its Herndon, Virginia office. [Dkt. No. 13] at ¶ 9.  Over the course of four years, he was promoted two times and did not receive any negative performance reviews. Id. at ¶¶ 10-11.  Due to the onset of the COVID-19 pandemic in March 2020, Cartwright's office moved to fully-remote work. Id. at ¶ 13.  T-Mobile later decided to move to vaccinated-only office spaces beginning in September 2021, requiring that employees submit proof of COVID-19 vaccination before entering a company office space. Id. at ¶ 15.  Unvaccinated employees and visitors were not permitted in the buildings at any time. Id.   Due to the ongoing pandemic, the September 2021 return-to-office date was pushed back to February 2022, when the President of T-Mobile's Business Group announced that "vaccination [would] be a job requirement for customer-facing roles . . . . Employees who have not sought a medical or religious accommodation or exception and who do not comply with the requirement will be placed on unpaid leave on that date." Id. at ¶ 16.

On October 20, 2021, Cartwright submitted his religious accommodation request to T-Mobile, id. at ¶ 20, claiming "his sincerely held religious beliefs as a follower of the Creator do not allow him to receive a COVID-19 vaccine or undergo weekly COVID-19 testing, as both procedures are invasive intrusions and constitute an assault on his body." Id. at ¶ 22.  He further explained that testing and vaccinations—specifically, the COVID-19 vaccine—violate his deeply held religious beliefs because "he cannot accept any product with foreign, human, or animal DNA, nor could he accept any product that requires the use of aborted human beings in the development or testing phases." Id. at ¶ 22; see also id. Ex. A (notarized statement explaining Cartwright's accommodation request).  In addition to filing a religious exemption form, T-

2

Mobile required Cartwright to complete a religious accommodation questionnaire comprised of 15 questions. Id. Ex. A.  According to Cartwright's Amended Complaint, he "seeks to make daily decisions, including those involving his vaccination status and other medical decisions, through prayer and reading scripture, among other practices.  He applied for religious accommodation as part of his adherence to his religious faith and for no other reason." Id. at ¶ 26.

Cartwright alleges that his manager verbally informed him in October 2021 that his request for accommodation was granted and that he could continue working, id. at ¶ 27; however, Cartwright was subsequently asked to file a second accommodation request, id. at ¶ 28. Cartwright submitted a request via email on January 24, 2022 to find out the status of his accommodation, at which time T-Mobile officially denied his accommodation request. Id. at ¶ 29.  Cartwright received official correspondence informing him of the denial of his accommodation request on February 10, 2022. Id. at ¶ 30.  T-Mobile placed Cartwright on unpaid leave on or about February 15, 2022, id. at ¶ 32, and informed him that he was not allowed to do anything related to work while he was on unpaid leave, id. at ¶ 35.  Cartwright claims that T-Mobile did not supply him with an explanation for denying his accommodation request; nor did it explain why vaccination was necessary when he had been working remotely since the onset of the COVID-19 pandemic, and before that he was not required to come into the office on a daily basis. Id. at ¶ 40. Cartwright's employment with T-Mobile was terminated on April 2, 2022. Id. at ¶ 37.

Cartwright alleges that before he was fired he unsuccessfully contacted six attorneys between early February 2022 and March 22, 2022. Id. at ¶¶ 41-42.  "He received two responses, and both attorneys declined to take the case, stating that they could not take on work at that time.

3

He asked those attorneys for additional recommendations and received no response." Id. at ¶ 43.

On December 16, 2022, Cartwright "received the information of counsel who would take his

case." Id. at ¶ 45.

On January 30, 2023, Cartwright contacted the Equal Employment Opportunity

Commission ("EEOC") via an online portal, but did not file a complaint[2] with the EEOC until

February 3, 2023,[3] which was 358 days after T-Mobile denied his February 10, 2022 request for

a religious accommodation and 307 days after it terminated his employment on April 2, 2022.

On February 9, 2023, the EEOC dismissed his charge because it "was not filed within the time

limits under the law; in other words, [Cartwright] waited too long after the date of the alleged

discrimination to file [his] charge." [Dkt. No. 18] at Ex. A (EEOC Letter of Dismissal and Notice

of Rights).

---

[2] Plaintiff refers to his February 3, 2023 filing with the EEOC as a "complaint;" however, 42
U.S.C. § 2000e-5 titles this filing as a "charge."  This Memorandum Opinion will adhere to the
statutory description of the filing.

[3] Plaintiff did not include copies of his EEOC charge or "Right to Sue Letter" as part of his
Amended Complaint.  Copies of these documents were included as Exhibit 1 to Defendant's
Memorandum in support of its Motion to Dismiss for Failure to State a Claim. [Dkt. No. 18]. A
court may consider documents that are explicitly incorporated into the complaint by reference.
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  It follows that a court
"may consider a document submitted by the movant that was not attached to or expressly
incorporated in a complaint, so long as the document was integral to the complaint and there is
no dispute about the document's authenticity." Id. (citing Sec'y of State for Def. v. Trimble Nav.
Ltd., 484 F.3d 700, 705 (4th Cir. 2007)); see also Am. Chiropractic Ass'n v. Trigon Healthcare,
Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.
1999)).  Courts may also "consider facts and documents subject to judicial notice without
converting a motion to dismiss into a motion for summary judgment.  Under this exception,
courts may consider relevant facts obtained from the public record so long as these facts are
construed in the light most favorable to the plaintiff along with the well-pleaded allegations of
the complaint." Deabreu v. United Parcel Serv., 2018 WL 6329136, at *2 (D. Md. Dec. 3, 2018)
(cleaned up).  When a court encounters a conflict between a bare allegation in a complaint and
any attached exhibit, the exhibit wins out. Fayetteville Inv'rs v. Com. Builders, Inc., 936 F.2d
1462, 1465 (4th Cir. 1991).

Cartwright alleges three counts against T-Mobile in his Amended Complaint. First, that T-Mobile violated Title VII, 42 U.S.C. § 2000e, et seq., for religious discrimination and disparate treatment. Cartwright claims to be a member of a "protected class based on his bona fide religious beliefs . . . [as] a Protestant Christian of a type that prohibits the use of vaccines and treatments with certain characteristics, including the use of foreign DNA and that use aborted fetal cells in their development." [Dkt. No. 13] at ¶ 56. Cartwright alleges that he suffered an adverse employment action when T-Mobile suspended and then terminated him, and that other employees outside the protected class were treated more favorably because "they did not share the same religious beliefs requiring them to refuse the vaccine." Id. at ¶¶ 60-61.

Count 2 alleges a violation of Title VII, 42 U.S.C. § 2000e, et seq., for failing to accommodate Cartwright's religious beliefs by denying his request for an accommodation "without answers and without certainty about the future of his employment for many months until he was ultimately terminated." [Dkt. No. 13] at ¶ 75. Cartwright claims that neither unpaid suspension nor termination were reasonable accommodations under the law. Id.

Lastly, Count 3 alleges a violation of Title VII, 42 U.S.C. § 2000e, et seq., for disparate impact. According to Cartwright, "T-Mobile imposed a vaccine requirement that would clearly impact those who share [his] beliefs—Protestant Christianity, and more specifically, Protestant Christians with religious objections to the COVID-19 vaccine—more harshly than others." [Dkt. No. 13] at ¶ 81.

Cartwright requests a jury trial and seeks compensatory damages; exemplary and punitive damages; prejudgment interest; and attorney's fees and costs. Id. at ¶ 82.

II.DISCUSSION

**A. <u>Standard of Review</u>**

T-Mobile moves to dismiss the Amended Complaint based on Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) requires a Court to dismiss claims contained in a

complaint if the "plaintiff's allegations fail to state a claim upon which relief can be granted."

<u>Abdelhamid v. Sec'y of the Navy</u>, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting <u>Adams v.</u>

<u>NaphCare, Inc.</u>, 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). A complaint must "provide enough

facts to state a claim to relief that is plausible on its face." <u>Robinson v. Am. Honda Motor Co.</u>,

551 F.3d 218, 222 (4th Cir. 2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

Although a court must accept all well-pleaded allegations as true and view a complaint in the

light most favorable to the plaintiff, it need not accept "unwarranted inferences, unreasonable

conclusions, or arguments." <u>Philips v. Pitt Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir.

2009) (quoting <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 616 n.26 (4th Cir. 2009)).

A complaint must contain more than "naked assertions" and "unadorned conclusory allegations"

and requires some "factual enhancement" to be sufficient. <u>Salagh v. Va. Int'l Univ.</u>, 2017 WL

976620, at *3 (E.D. Va. Mar. 13, 2017) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)); <u>see</u>

<u>also</u> <u>Twombly</u>, 550 U.S. at 557.

**B. <u>Analysis</u>**

### 1. Failure to Exhaust

Title VII requires an employee to timely exhaust administrative remedies before filing

suit in federal court.  Specifically, an employee must file a charge with the EEOC or state

administrative agency within 300 days of the discriminatory act. <u>See</u> 42 U.S.C. § 2000e-5(e);

<u>Sydnor v. Fairfax Cty.</u>, 681 F.3d 591, 593 (4th Cir. 2012).  Rather than "a formality to be rushed

through," this exhaustion requirement is "an integral part of the Title VII enforcement scheme."

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). Requiring a party to file a charge
with the EEOC "ensures that the employer is put on notice of the alleged violations," Miles v.
Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005), thereby giving it a chance to address the alleged
discrimination before litigation. In practice, parties can often obtain relief earlier than they
would be able to in court, where "the ponderous pace of formal litigation" can force "victims of
discrimination . . . to wait while injustice persists." Chacko, 429 F.3d at 510 (cleaned up). The
requirement also places the resolution of employment discrimination disputes initially in the
hands of the EEOC. Allowing the agency the first crack at these cases respects Congress's intent
"to use administrative conciliation as the primary means of handling claims, thereby encouraging
quicker, less formal, and less expensive resolution of disputes." Chris v. Tenet, 221 F.3d 648,
653 (4th Cir.2000); see also Sydnor, 691 F.3d at 593.

If a complainant fails to file a charge within 300 days of the discriminatory act, the
allegation is time barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); see
also Zettervall v. Leidos, 2023 WL 4494167, at *2 (E.D. Va. July 12, 2023) (Giles, J.) (granting
a motion to dismiss where plaintiff filed an EEOC charge more than 300 days after the alleged
discriminatory act). Importantly, the EEOC's statement that a charge was untimely filed is
sufficient grounds for dismissing a Title VII suit as time barred. Zettervall v. Zachary Piper
Sols., LLC, 2023 WL 3568089, at *2 (E.D. Va. May 5, 2023) (Brinkema, J.). "If a plaintiff fails
to file a timely charge of discrimination with the EEOC, the claim is time-barred and ordinarily
may not be pursued in federal court; however, the failure to file a timely charge with the EEOC
is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of
limitations, is subject to waiver, estoppel, and equitable tolling.'" Id. (quoting Zipes v. Trans
World Airlines, Inc., 455 U.S. 385, 393 (1982)).

The Court need not rely solely on the EEOC's determination that the claim is untimely: The Amended Complaint alleges that T-Mobile informed Cartwright that his request for religious accommodation was denied on February 10, 2022; he was placed on unpaid leave on February 15, 2022; and his employment was terminated on April 2, 2022. [Dkt. No. 13] at ¶¶ 30-32, 37. Cartwright did not file a charge with the EEOC until February 3, 2023, id. at ¶ 48, which was beyond the 300-day time limit.[4]  Limitations periods for administrative exhaustion are strictly construed, and Cartwright failed to timely file his charge with the EEOC. See, e.g., Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997) ("Incidents outside the statutory window are time-barred.").

### 2. Equitable Tolling

In his Memorandum in Opposition to Defendant's Motion to Dismiss [Dkt. No. 25], Cartwright concedes that his EEOC charge was not timely filed, id. at 5 ("Plaintiff acknowledges that 307 days is not 300 days and that he did not timely file his complaint."); however, he attempts to justify his untimely filing by pointing to his unsuccessful efforts to retain attorneys who did not respond to his inquiries regarding potential representation. [Dkt. No. 13] at ¶¶ 41-49; see also [Dkt. No. 25] at 6 ("Equitable tolling is appropriate because he attempted to repeatedly find counsel and understand his rights but to no avail. Outside forces prevented Mr. Cartwright from filing his claim . . . ."). Although equitable tolling remains within the Court's discretion, Cartwright's allegations do not meet either the high threshold for such a remedy or constitute the "rare instance[] where—due to circumstances external to the party's own

---

[4] Even if Cartwright's termination date of April 2, 2022—the latest date alleged in the Amended Complaint—is deemed to be the operative date for purposes of the three-hundred-day clock, the charge was untimely, as it was filed 307 days after Cartwright's termination.

conduct—it would be unconscionable to enforce the limitation period . . . and gross injustice would result." See, e.g., Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Discretionary equitable tolling "applies when (1) a defendant wrongfully prevents a plaintiff from asserting [his] claims, or (2) extraordinary circumstances beyond the plaintiff's control prevent [him] from filing on time." Ott v. Md. Dep't of Pub. Safety & Corr. Servs., 909 F.3d 655, 660-61 (4th Cir. 2018); Gholson v. Benham, 2015 WL 2403594, at *3 (E.D. Va. May 19, 2015) ("Equitable tolling generally applies when some outside force prevents the employee from filing her claim or she took good-faith but ineffective steps to file her claim within the statutory period." (citation omitted)).  Federal courts have typically extended equitable relief only sparingly. Irwin v. Dep't of Veterans Affs., 498 U.S. 89 (1990).

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Id. at 96-97 (citations omitted). In Irwin, the Supreme Court declined to equitably toll the limitations period to file a charge with the EEOC for a petitioner who pointed to his lawyer's absence from his office when the EEOC notice was delivered. The "principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." Id. at 97.

Cartwright fails to allege any extraordinary circumstances beyond his control that precluded him from timely filing his charge with the EEOC.[5]  Cartwright argues that he

---

[5] In Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147 (1984), the Supreme Court articulated the following scenarios which might give rise to a more searching equitable tolling analysis: where a claimant received inadequate notice; where there is a pending motion for appointment of

9

contacted attorneys as early as February 2022 (before his April 2022 termination). [Dkt. No. 33] at ¶ 41. Yet, after doing so, he took no action until December 16, 2022—ten months later. Id. at ¶¶ 42-45. After receiving unspecified information from an unidentified lawyer who allegedly agreed to take his case on December 16, 2022, Cartwright did not file an EEOC charge until February 3, 2023. A plaintiff's "misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control." See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Further, "[i]gnorance of the law does not justify tolling, even when a party does not have legal representation." Id. In sum, Cartwright fails to allege any extraordinary circumstances that would warrant equitable tolling of the time in which to file a charge with the EEOC.[6]

### III. CONCLUSION

For the reasons stated above and by an Order to be issued with this Memorandum Opinion, Defendant T-Mobile's Motion to Dismiss [Dkt. No. 17] will be granted.

Entered this 13 day of September, 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

counsel; where the court has led the plaintiff to believe that she had done everything required of her; or where affirmative conduct on the part of the defendant lulled the plaintiff into inaction. Id. at 151 (collecting cases). None are present here.

[6] In his Memorandum in Opposition to Defendant's Motion to Dismiss [Dkt. No. 25], despite referring to "[o]utside forces" preventing him from timely filing, Cartwright fails to provide any sufficient contours to discern who or what constituted the blockade. Id. at 6.